# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

LINDA BEAUPRE,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

Case No. 2:18-cv-02032-JCM-BNW

**ORDER**

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Linda Beaupre's (Plaintiff's) application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 12), filed February 27, 2019, and Defendant's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF Nos. 13, 14), filed March 25, 2019. Plaintiff did not reply.

This matter was referred to the undersigned magistrate judge on May 3, 2019, for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4. The undersigned issued a Report and Recommendation on January 10, 2020. (ECF No. 16.) On January 17, 2020, following the consent of both parties, this case was referred to the undersigned for all further proceedings. (ECF No. 18.) In light of the parties' consent, the court will vacate its Report and Recommendation (ECF No. 16) and enter this order.

**I.     BACKGROUND**

    **A.     Procedural History**

In 2014, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging an onset date of July 31, 2012. AR[1] 238-45. The Commissioner denied Plaintiff's claims initially and upon reconsideration. AR 154-73. A hearing was then held before an Administrative Law Judge (ALJ) on July 10, 2017. AR 35-76. On September 18, 2017, the ALJ issued a decision finding Plaintiff was not disabled. AR 12-34. Plaintiff requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied this request on August 29, 2018, making the ALJ's decision the Commissioner's final decision. AR 1-6. On October 22, 2018, Plaintiff commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* ECF No. 1.)

**B.    The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since July 31, 2012. AR 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, migraines, degenerative disc disease of the lumbar spine, and depressive disorder. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 18.

Next, the ALJ determined the Plaintiff's residual functional capacity (RFC). AR 20. As is relevant for purposes of this decision, the ALJ found that Plaintiff had the RFC to "interact occasionally with coworkers and supervisors, but no joint projects." *Id.*

At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 26.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 9).)

perform. AR 67-68. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 26-27.

## II. DISCUSSION

### A. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

**B.     Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability,

a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a*); see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and perform a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform her past work, then a finding of "not disabled" is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of "not disabled" is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for

providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

**C.     Analysis**

    **1.     Medical Opinion Evidence**

        **i.     Drs. Hill and Brode's Opinions**

Plaintiff faults the ALJ for rejecting Drs. Hill and Brode's opinions regarding the disabling nature of Plaintiff's conditions. (ECF No. 13 at 7-11.) Drs. Hill and Brode were both non-examining state agency doctors who reviewed Plaintiff's file. AR 90, 125. Both of these doctors opined that Plaintiff could perform simple work that does not "require prolonged contact with the public." *See* AR 90, 125. Plaintiff faults the ALJ for rejecting this opinion without explaining why it was rejected. (ECF No. 12 at 9 ("The ALJ's silent rejection of the opinions of Drs. Hill and Brode constitutes legal error.").)

        **ii.     The ALJ's Decision**

The ALJ gave Drs. Hill and Brode's opinions both "some weight" but found that the record supported a finding of greater limitations that those found by Drs. Hill and Brode. AR 25. The ALJ neither discussed nor rejected their finding that Plaintiff could not have prolonged contact with the ***public***. *Id.* In the ALJ's RFC assessment, he made a somewhat different finding, namely that Plaintiff could only interact occasionally with ***coworkers and supervisors***. *Id.* at 20. However, elsewhere in his decision, he noted that his RFC limited the Plaintiff to "occasional interaction with ***others***." *Id.* at 24. Further, in the hypothetical that that the ALJ posed to the VE and relied on, he stated Plaintiff could only have occasional contact with the ***public and coworkers***. AR 71.

        **iv.     Whether the ALJ Erred**

Again, Plaintiff argues that the ALJ erred by improperly rejecting the opinions of Drs. Hill and Brode that Plaintiff could not have prolonged contact with the public. Plaintiff is correct that an ALJ may not reject a doctor's opinion without any explanation. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). However,

the ALJ did not reject Drs. Hill and Brode's opinion that Plaintiff should have limited contact with the public. As noted above, the ALJ's RFC assessment only limited Plaintiff to occasional contact with coworkers and supervisors, but the ALJ explicitly interpreted his RFC assessment to mean Plaintiff should also only have occasional contact with the public. AR 24, 71. And even if the ALJ did err by not including an express limitation to occasional contact with the public in his RFC, this error was harmless, as he included this limitation in the hypothetical he posed to the VE and relied on.[3] AR 71.

### 2. Vocational Expert Testimony

#### i. Plaintiff's Arguments

Plaintiff faults the ALJ for relying on the VE's testimony regarding jobs Plaintiff can perform. The VE testified that someone who has the same limitations as Plaintiff could be a credit authorizer, surveillance system monitor, and addresser. AR 34-36. Plaintiff argues that she cannot do any of these jobs. According to Plaintiff, she cannot be a credit authorizer or a surveillance system monitor because the level of communication required for these jobs exceeds Plaintiff's limitations. (ECF No. 12 at 17.) Regarding the credit authorizer position, Plaintiff explains that according to the DOT, the job involves "frequent" talking, including interviewing and conferring with customers. (*Id.* at 15.) Regarding the surveillance system monitor position, Plaintiff explains that according to the DOT, this position also involves frequent talking and a temperament fit for "dealing with people." (*Id.* at 16.) As the ALJ limited Plaintiff to occasional interactions with the public and coworkers in his hypothetical (AR 71), Plaintiff argues that there is an inconsistency between the VE's testimony that Plaintiff can perform these jobs and the DOT's requirements for

---

[3] The first time the ALJ presented the hypothetical to the VE, he limited Plaintiff to occasional interaction with coworkers and supervisors. AR 69. After this hypothetical was given, the VE said that Plaintiff could be an addresser. AR 70. Then, the VE asked the ALJ to repeat what the limitation was on interacting with "the public and coworkers." AR 71. The ALJ replied the limitation was "occasional." *Id.* In response, the VE said the Plaintiff could be a credit authorizer and surveillance system monitor. AR 71-72. Thus, Plaintiff was technically only limited to occasional contact with coworkers and supervisors (and not the public) when the VE testified she could be an addresser. However, this fact is not material to the court's decision, as Plaintiff is not arguing that she cannot be an addresser due to her social limitations. Rather, as discussed in more detail below, she argues she cannot be an addresser because the position is obsolete.

each. (ECF No. 12 at 14-17.)

Plaintiff further explains that an ALJ has a duty to explore conflicts between the VE's testimony and DOT. (*Id.* at 15.) Plaintiff argues that the ALJ must ask the VE to explain any conflicts and then determine whether the VE's explanation is reasonable such that the ALJ should accept the VE's testimony. (*Id.*)

Plaintiff also argues she cannot be an addresser because this occupation is obsolete. (ECF No. 12 at 17.) The DOT states that 102,000 addresser positions exist and that an addresser, "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT 209.587-010, 1991 WL 671797. Citing this definition and a published Social Security Administration study from 2011 that states, "[i]t is doubtful that these jobs, as described in the DOT, currently exist in significant numbers" in the national economy, Plaintiff reasons that the addresser position is clearly outdated. (*Id.* at 13.) Plaintiff concludes that no reasonable person would believe that 102,000 addresser positions exist and accordingly, the ALJ's decision is not supported by substantial evidence. (*Id.* at 14 (citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

### ii.   Commissioner's Arguments

The Commissioner responds by arguing that the ALJ properly relied on the VE's testimony. (ECF No. 13 at 7, 13.) This is so, according to the Commissioner, because there are no conflicts between the VE's testimony and the DOT. (*Id.* at 7-10.) Regarding the credit authorizer and surveillance system monitor positions, the Commissioner argues that "the ALJ included in his hypothetical a limitation to occasional interaction with people, and nothing in the DOT description requires more than this level of interaction." (*Id.* at 9.) The Commissioner further argues that because the position descriptions in the DOT do not conflict with the VE's testimony, the ALJ was entitled to rely on the VE's testimony. (*Id.* at 9-10.)

Regarding the addresser position, the Commissioner argues that courts have rejected the idea that the position is obsolete. (*Id.* at 7-8.) The Commissioner, however, also does not cite any

published Ninth Circuit opinions holding that the addresser position is outdated.

### iii. When an ALJ May Rely on a VE's Testimony

Before an ALJ can rely on a VE's testimony, SR 00-4p requires the ALJ to ask the VE whether his testimony is consistent with the DOT. *See also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (holding the ALJ may not rely on a VE's testimony "without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*."). As the Ninth Circuit explained:

> SSR 00–4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles* ]." SSR 00–4p further provides that the adjudicator "*will* ask" the vocational expert "if the evidence he or she has provided" is consistent with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent conflict.

*Id.* at 1152-53 (emphasis in original).

The ALJ may rely on the VE's testimony "'even if it is inconsistent with the job descriptions set forth in the *Dictionary*[.]'" *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (quoting *Conn v. Secretary of Health and Human Services,* 51 F.3d 607, 610 (6th Cir. 1995)). However, in the event there is a conflict (or an apparent conflict) between the VE's testimony and the DOT, the ALJ must determine whether the VE's explanation regarding why the plaintiff can still perform a certain occupation is reasonable and provide a basis for relying on the VE's testimony rather than on the DOT. SSR 00-4p; *Lamear*, 865 F.3d at 1206 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile this inconsistency."); *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if h[is] testimony is consistent with the DOT.").

If the ALJ does not pursue this line of inquiry to reconcile discrepancies between a VE's testimony and the DOT, the court cannot determine whether substantial evidence supports the ALJ's step-five findings relating to whether the plaintiff can perform jobs that exist in significant numbers in the economy. *Massachi*, 486 F.3d at 1152-53. Accordingly, the ALJ errs when (1) he does not ask if the VE's testimony is consistent with the DOT and (2) when he does ask but there is no explanation for a conflict in the record. *See id.* at 1154 n.19; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

Here, the ALJ did not ask the VE whether his testimony was consistent with the DOT. *See* AR 36-76. And the court cannot conclude that this error was harmless, given the apparent conflict that exists between the Plaintiff's social limitations (to occasional contact with others) and the job descriptions for credit authorizer and surveillance system monitor. *See* Credit Authorizer, DOT 205.367-014, 1991 WL 671715 (position description includes interviewing and conferring with customers and frequent talking); Surveillance System Monitor, DOT 379.367–010, 1991 WL 673244 (position description involves frequent talking). As such, the court cannot determine whether substantial evidence supports the ALJ's step-five finding that Plaintiff can perform the jobs of credit authorizer and surveillance system monitor, given Plaintiff's social limitations. *Massachi*, 486 F.3d at 1153-54, n. 19 (because the ALJ did not ask the VE whether there was a conflict between his testimony and the DOT, and there was an apparent conflict, the court could not determine if substantial evidence supported the ALJ's step-five finding that the plaintiff could do other work). Accordingly, the court will order that this case be remanded for the ALJ to explore the apparent conflicts between the Plaintiff's social limitations and the positions of credit authorizer and surveillance system monitor.

Whether Plaintiff can perform the job of addresser is a more difficult question, as there is no controlling Ninth Circuit precedent addressing whether the position of "addresser" is obsolete.[4] Accordingly, the question becomes whether substantial evidence exists that the

---

[4] Plaintiff concedes this point. (ECF No. 12 at 12 ("The Ninth Circuit Court of Appeals does not directly address this issue . . . .").)

addresser position exists in significant numbers in the economy. *See Revels*, 874 F.3d at 654 ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Here, the court holds that a reasonable mind would not accept the VE's testimony and the DOT's data from 1991 as adequate to support the conclusion that 102,000 addresser jobs exist in the United States. *See Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (holding that a reasonable mind would not accept the VE's testimony regarding the existing number of dance hall hostess positions); *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *8 (C.D. Cal. Apr. 2, 2018) ("As other courts have found, common sense (bolstered here by the information presented in the Study and on the SSA website itself), casts doubt on the reliability and credibility of the VE's testimony and on the ALJ's reliance on that testimony to conclude that the occupation of 'addresser' currently exists in significant numbers."). Accordingly, the court will order that this case be remanded for the ALJ to determine the availability of the "addresser" position in today's marketplace and, if warranted, the availability of other (non-obsolete) occupations existing in the national and/or regional economy that Plaintiff can still perform.

### III. CONCLUSION AND ORDER

IT IS THEREFORE ORDRED that the court's Report and Recommendation (ECF No. 16) is VACATED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 12) is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent this case is remanded for further proceedings and DENIED in all other respects.

IT IS FURTHER ORDERED that this case be REMANDED for further proceedings for the ALJ to explore (1) the apparent conflicts between the Plaintiff's social limitations and the positions of credit authorizer and surveillance system monitor and (2) the availability of the "addresser" position in today's marketplace and, if warranted, the availability of other (non-obsolete) occupations existing in the national and/or regional economy that Plaintiff can still perform.

IT IS FURTHER ORDERED that the Commissioner's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF Nos. 13, 14) is DENIED.

IT IS FURTHER ORDERED that that the Clerk of Court must enter judgment in favor of Plaintiff and against Defendant.

DATED: January 21, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE